| | | |
|---|---|---|
| BERKLEY TRACE, LLC<br>39 Cooper Street<br>Woodbury, New Jersey 08096 | * | IN THE CIRCUIT COURT |
| | * | FOR WORCESTER COUNTY |
| | * | STATE OF MARYLAND |
| -and- | * | |
| | * | CASE NO. 23-C-10-1871 |
| THE HAMPTON COMPANY INC.<br>7115 Ambassador Road<br>Baltimore, Maryland 21244 | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | |
| | * | |
| FOOD LION, LLC<br>c/o V.P. of Legal Affairs<br>2110 Executive Blvd.<br>Salisbury, North Carolina 28145 | * | |
| | * | |
| Serve: CSC-Lawyers Inc.<br>Service Co.<br>7 St. Paul St., Ste 1660<br>Baltimore, MD 21202 | * | |
| | * | |
| | * | |
| -and- | * | |
| | * | |
| CAMELLIA FOOD STORES, INC.<br>1300 Diamond Springs Rd.<br>Virginia Beach, Virginia 23455 | * | |
| | * | |
| Serve: Richard A. Saunders<br>6160 Kempsville Circle<br>Suite 341B<br>Norfolk, VA 23502 | * | |
| | * | |
| -and- | * | |
| EASTERN SHORE MARKETS, INC.<br>1157 Production Road<br>P.O. Box 2320<br>Norfolk, VA 23501 | * | |
| | * | |
| | * | |
| Serve: The Corp. Trust Inc. | | |

1

351 West Camden Street
Baltimore, MD 21201 *

Defendants            *

\* \* \* \* \* \* \* \* \* \* \* \* \*

## AMENDED COMPLAINT

NOW COME Plaintiffs, BERKLEY TRACE, LLC ("BT") and THE HAMPTON COMPANY INC. ("THC") (collectively, "Plaintiffs"), by and through their attorneys, Bruce F. Bright and Ayres, Jenkins, Gordy & Almand, P.A., and, for their causes of action against Defendants, FOOD LION, LLC ("Food Lion"), CAMELLIA FOOD STORES, INC. ("Camellia"), and EASTERN SHORE MARKETS, INC. ("ESM") (collectively, "Defendants"), state as follows:

1. Plaintiff BT is a New Jersey limited liability company, having its principal place of business in Woodbury, New Jersey, and registered to do business in the State of Maryland.

2. Plaintiff THC is a Maryland corporation having its principal place of business in Baltimore, Maryland, and owning property and carrying on regular business activities in Worcester County, Maryland.

3. Defendant Food Lion is a North Carolina limited liability company, carrying on regular business activities throughout the State of Maryland, including Worcester County, Maryland.

4. Defendant Camellia is a Virginia corporation, carrying on regular business activities throughout the State of Maryland, including Worcester County, Maryland.

2

5. Defendant ESM is a Virginia corporation, carrying on regular business activities throughout the State of Maryland, including Worcester County, Maryland.

6. Plaintiffs are, and at all relevant times have been, the owners and operators of certain real property and improvements located on Cathell Road in Ocean Pines, Maryland, known more particularly as the "Pines Plaza Shopping Center" hereinafter "Pines Plaza." Pines Plaza is a multi-unit commercial shopping center. At Pines Plaza, Plaintiffs and their predecessors-in-title have, since 1985, "housed" (i.e., provided a business location to) a supermarket/grocery store (owned and operated by ESM and/or Camellia), serving the local Ocean Pines market. As such, Plaintiffs (and their predecessors-in-title) have been, since 1985, a "market participant" in the grocery store/supermarket industry.

7. By a Lease dated May 7, 1985 ("Lease"), ESM leased the "anchor" unit (which comprises the largest rentable square footage of space within the shopping center) at Pines Plaza from Plaintiffs' predecessor-in-title (namely, RR&Z Realty Investments, Inc.). *See* copy of Lease, attached hereto and incorporated herein as Exhibit A.

8. By a written "Amendment to Lease" dated April 29, 2002, the Lease was amended by Plaintiffs' predecessor-in-title Pines Plaza Limited Partnership ("PPLP") and ESM. *See* Exhibit B. By virtue of such Amendment, among other things, two five-year optional renewal terms were added, the first one commencing on April 1, 2006 and expiring on March 31, 2011; and the second one commencing on April 1, 2011, and expiring on March 31, 2016. *See* Exhibit B.

9. Upon information and belief, Camellia is the "parent" company of ESM, i.e., ESM is a wholly-owned subsidiary of Camellia, or alternatively, Camellia is a corporate

3

successor to ESM.

10. From 1985 until 2008, Camellia and ESM operated a grocery store as the anchor tenant at Pines Plaza, under the name "Fresh Pride," among others. Based on the "anchor tenant" status of ESM and Camellia, their continuous and proper operation of the Fresh Pride store was particularly important, at all relevant times, to the successful performance and occupancy of the Pines Plaza shopping center.

11. In or about 2007, Food Lion opened a food/grocery store location in Ocean Pines, Maryland, at a shopping center known as Pennington Commons, located within a short distance of Pines Plaza. Such Food Lion store was, from and after its opening, in direct competition with the Fresh Pride store operated by ESM and Camellia at Pines Plaza.

12. In December 2007, Ed Dery, then the president and CEO of Camellia, advised one of Plaintiffs' principals, Angelo R. ("Ray") Guidice, that a deal was "in the making" between Camellia and Food Lion, whereby Food Lion would pay a substantial sum of money to Camellia and/or its landlord, in consideration for a binding promise keep the Fresh Pride store at the Pines Plaza shopping center "dark" for a period of years. By letter to principals of Plaintiffs dated December 13, 2007, Ed Dery stated that "if I do not get the money from Food Lion to pay you and terminate our lease, we must close the store in January or February anyway, and pay you the $17,000 a month rent until we cannot pay, which would probably be in a matter of months. If that occurs, you will have no tenant, no $17,000 rental payments, and no $600,000 in cash, and probably no supermarket in the premises ever, unless you open one yourself." *See* Exhibit C.

13. Five days later, by letter dated December 18, 2007, Mr. Dery discussed the fact that "the opportunity with Food Lion" may be "slipping away," and increased the offer to

4

$700,000, once again warning that "[w]e must close the store soon regardless." *See* Exhibit D.

14.     By letter to Ray Guidice dated January 10, 2008, Mr. Dery stated as follows: Food Lion signed an agreement with us on January 4, which I finally received today, which included Camellia closing our Ocean Pines location. With our Ocean Pines sales down to $25,686 for Christmas week ending Saturday, December 29 [2007], we had to sign a deal with Food Lion before it was too late. This agreement has a Transaction Settlement Date of January 30, 2008. We are closing Fresh Pride #119 in Ocean Pines permanently between 6:00 PM January 28 and February 5, 2008. If we deliver a draft termination and restriction agreement (restriction of our premises being used for a supermarket or retailer with food sales of 10% or more) to Food Lion on or before January 20, 2008, a final executed agreement satisfactory to Food Lion on or before January 30, 2008, and have the agreement recorded in the county land records in Snow Hill by February 1, 2008, we will pay you (the owners of Pines Plaza) $700,000.00 by certified check on or before February 6, 2008." *See* Exhibit E.

15.     Fresh Pride began publicly advertising a "store closing sale . . . starting January 16, 2008," and by letter dated January 15, 2008, Ed Dery advised Ray Guidice that the store would be closing "on or before February 4, 2008." *See* Exhibits F and G. In that January 15, 2008 letter, Mr. Dery stated:

> "As I previously told you, our executed agreement with Food Lion gives us until January 20, 2008 (Sunday), so I guess Friday, January 18 or Monday January 21 is the deadline to have a draft 'Lease Termination and Restriction Agreement' to them . . . Hopefully, you can understand my stress knowing that Food Lion will get what they want (no supermarket in the location through March 31, 2016)

5

without paying anything for it. I have attached an agreement with an $800,000.00 payment to you for executing the agreement and meeting Food Lion's requirements. It is imperative that we have a draft to Food Lion by January 20, 2008."

*See* Exhibit G.

16. By facsimile to Ray Guidice dated January 16, 2008, Mr. Dery stated that "I must send Food Lion a draft, at least something, by Friday or Monday. Please call me to let me know what we can do. It upsets me to think that Food Lion will get what they want (no supermarket in the space for 9 years) for nothing, while we try to pay $600,000 over the next 3.5 years." *See* Exhibit H.

17. Upon information and belief, Camellia and/or ESM entered into an agreement with Food Lion which included Camellia/ESM's promise to close its Ocean Pines store, i.e., to "go dark" at the Pines Plaza location, and that additional moneys would have been paid by Food Lion to Camellia and/or the Landlord, if the Landlord (Plaintiffs) had been willing to enter into the lease termination agreement, which would have prohibited Plaintiffs from having any food store in that location for an agreed upon period of time. The draft lease termination and restriction agreement forwarded by Ed Dery contemplated that it would be recorded in the Land Records, and would therefore "run with the land," and be binding on the Landlord's successors-in-title.

18. Plaintiffs never pursued any "deal," arrangement, or agreement along those lines with Food Lion and/or Camellia/ESM. The exact terms of the agreement that was ultimately

made between Camellia/ESM and Food Lion are unknown to Plaintiffs at this time, however, upon information and belief, Food Lion did, in fact, enter into an agreement with Camellia/ESM, under which Camellia/ESM was paid (or is being paid) a significant amount of money by Food Lion to "go dark" at the Pines Plaza location (among others), for the remaining years of its Lease. The Fresh Pride store was closed by Camellia/ESM in or about February 2008, and has remained closed ever since. Since February 2008, Plaintiffs and their agents and representatives have made reasonable efforts, without success, to find a new tenant for the unit in question.

19. Since February 2008, Camellia and ESM have continued to pay rent due and owing to Plaintiffs under the Lease, however, they have otherwise breached their obligations under the Lease by:

    a) failing to operate the grocery store business in the premises and keep it open during normal hours of operation or as otherwise required or permitted by Plaintiffs;

    b) failing to operate the grocery store business and maintain the decor and fixtures, and merchandise in a "first class," "high quality" manner, as those standards of operation may have been and were interpreted by Plaintiffs, as the Landlords;

    c) failing to cause its business to be conducted and operated in good faith and with adequate staff and merchandise and otherwise in such a manner as would assure the transaction of the maximum volume of business in or from the Premises;

    d) failing to maintain the leased premises; and

    e) otherwise failing to comply with the terms and conditions of the Lease.

20. Because Camellia/ESM served as the "anchor tenant" at Pines Plaza, the cessation of operations and "going dark" of the Fresh Pride Store has adversely impacted (and will continue to adversely impact) the overall performance of the shopping center, its occupancy rates, the performance of the other tenants, and the general marketability and value of the

shopping center, and has resulted (and will result) in significant financial losses and harm suffered by Plaintiffs.

### COUNT I - Breach of Contract
### (against ESM and Camellia)

21.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 20, as if fully re-stated and re-alleged herein.

22.     Defendants ESM and Camellia owe and have owed contractual and fiduciary duties to Plaintiffs under the Lease, as amended, which Camellia and ESM have breached and are continuing to breach. Specifically, beginning in February 2008, Camellia and ESM have breached their obligations under the Lease by:

- a) failing to operate the grocery store business in the premises and keep it open during normal hours of operation or as otherwise required or permitted by Plaintiffs;

- b) failing to operate the grocery store business and maintain the decor and fixtures, and merchandise in a "first class," "high quality" manner, as those standards of operation may have been and were interpreted by Plaintiffs, as the Landlords;

- c) failing to cause its business to be conducted and operated in good faith and with adequate staff and merchandise and otherwise in such a manner as would assure the transaction of the maximum volume of business in or from the Premises;

- d) failing to maintain the leased premises; and

- e) otherwise failing to comply with the terms and conditions of the Lease.

By doing so, ESM and Camellia have knowingly caused circumstances and conditions at the Pines Plaza shopping center to change for the worse, such that the vacancy of the "anchor unit" previously occupied by the open and operating Fresh Pride store caused other existing tenants to lose business and revenue from lower consumer "traffic" through the shopping center, and to

breach their respective leases with Plaintiffs (by, among other things, failing to pay all rent coming due). As a result of the intentional conduct of ESM, Camellia, and Food Lion, as alleged above, Plaintiff has experienced increasing difficulty attracting prospective tenants to the Pines Plaza shopping center, and marketing vacant units to prospective tenants, resulting in a reduced occupancy rate and lower rental and other revenue and income derived by Plaintiffs from the operation and ownership of the Shopping Center. In addition, as a result of the intentional conduct of ESM and Camellia, as alleged above, and the resulting lower occupancy rates and worse financial performance of the shopping center, the market value of the Pines Plaza property has been diminished. In addition, Plaintiffs have suffered other economic and financial losses, including lost revenue from the unit previously occupied by Fresh Pride, as a result of the breaches by ESM and Camellia of their contractual and fiduciary duties.

23. As a result of such breach(es) of the Lease by Defendants ESM and Camellia, Plaintiffs have suffered and will suffer damages and losses.

WHEREFORE, Plaintiffs demand judgment against Defendants Camellia and ESM, jointly and severally, for damages in the amount of $750,000.00, plus interest and reasonable attorney's fees, and for such other and further relief as this Honorable Court deems just and proper.

### COUNT II - Civil Conspiracy
(against All Defendants)

24. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 23 of the Complaint, as if fully re-stated and re-alleged herein.

25. Defendants have acted jointly and cooperatively, in furtherance of

a conspiracy to harm Plaintiffs.

26.     As a result, Plaintiffs have suffered and will continue to suffer economic harm.

WHEREFORE, Plaintiffs demand judgment against all Defendants (Food Lion, Camellia and ESM), jointly and severally, for damages in the amount of $750,000.00, plus interest and reasonable attorney's fees, and for such other and further relief as this Honorable Court deems just and proper.

### COUNT III - Breach of Fiduciary Duty
### (against Defendants ESM and Camellia)

27.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 26 of the Complaint, as if fully re-stated and re-alleged herein.

28.     As a tenant at Pines Plaza and a party to the Lease with Plaintiffs, Defendants ESM and Camellia, at all relevant times, owed contractual and fiduciary duties to Plaintiffs in connection with their occupancy of the premises.

29.     Defendants ESM and Camellia have violated and breached those contractual and fiduciary duties by engaging in the conduct alleged above.

30.     As a result of such breaches and conduct by ESM and Camellia, Plaintiffs have suffered and will continue to suffer economic losses and harm.

WHEREFORE, Plaintiffs demand judgment against Defendants Camellia and ESM, jointly and severally, for damages in the amount of $750,000.00, plus interest and reasonable attorney's fees, and for such other and further relief as this Honorable Court deems just and proper.

### COUNT IV - Tortious Interference with
### Contractual Relations
### (against Food Lion only)

31.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 30 of the Complaint, as if fully re-stated and re-alleged herein.

32.     Defendant Food Lion has knowingly, intentionally, improperly, and with actual malice toward Plaintiffs, induced a breach of an existing contract between Plaintiffs and Defendants ESM/Camellia, namely, the Lease, and by doing so has tortiously interfered with the contractual relationship between Plaintiffs and Camellia/ESM.  Specifically, with full knowledge of the existing contractual relationship between Plaintiffs and ESM and Camellia, Food Lion intentionally interfered with such contractual relationship and induced ESM and Camellia (through the payment of an enormous sum of money and other consideration and inducements) to breach their Lease with Plaintiffs by, among other things as alleged above, "going dark" at, and shutting down their operation of, the Fresh Pride store at Pines Plaza.  Food Lion did so through a written or oral agreement with Camellia and/or ESM, requiring them to close the Fresh Pride store (which was, at the time, the only competition in Ocean Pines for the newly-opened Food Lion store at Pennington Commons), upon information and belief, in exchange for the payment by Food Lion to Camellia and/or ESM of an amount in excess of $800,000.00.  Food Lion did so intending and knowing that such action would cause significant financial loss to Plaintiffs. Defendants ESM and Camellia have, in fact, breached the Lease, as alleged above, in a manner that has caused significant harm to Plaintiffs, notwithstanding the fact that ESM and Camellia have continued, since closing the Fresh Pride store, to pay certain rental amounts coming due under the Lease.  But for Food Lion's tortious interference, as alleged herein, and Food Lion's

payment of substantial sums of money to ESM and Camellia in exchange for their promise to shut down the Fresh Pride store, ESM and Camellia would not have shut down such store and would have continued to operate it at Pines Plaza, in direct competition with Defendant Food Lion's new store at Pennington Commons.

33.     As natural, proximate and direct effect and result of such tortious conduct by Food Lion and the breach(es) of the Lease by ESM and Camellia, Plaintiffs have suffered and will continue to suffer damages and losses.

WHEREFORE, Plaintiffs demand judgment against Defendant Food Lion for compensatory damages in the amount of $750,000.00, punitive damages in the amount of $1,000,000.00, plus interest and reasonable attorney's fees, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT V - Tortious Interference with Contractual and Business/Economic Relations
### (against all Defendants)

34.     Plaintiffs incorporate by reference the allegations in paragraphs 1 through 33 of the Complaint, as if fully re-stated and re-alleged herein.

35.     Defendants, and each of them, have knowingly, intentionally, improperly, and with actual malice toward Plaintiffs, interfered with economic, business, and/or contractual relationships between Plaintiffs and third parties (specifically, Plaintiffs' other tenants and prospective tenants at Pines Plaza), and the business expectations and opportunities of Plaintiffs vis-a-vis the other tenants and prospective tenants at Pines Plaza. Specifically, with full knowledge of the existing contractual relationships between Plaintiffs and their other tenants at Pines Plaza, and with full knowledge of the existing business relationships between Plaintiffs and

prospective tenants at Pines Plaza, ESM, Camellia, and Food Lion intentionally interfered with such contractual and business relationships by entering into the agreement whereby ESM and Camellia, in exchange for money paid by Food Lion, closed and ceased operation of the Fresh Pride store at Pines Plaza. ESM, Camellia, and Food Lion did so intentionally and with full knowledge that doing so would cause substantial harm to Plaintiffs' contractual and/or business relationships with existing tenants (other than ESM/Camellia) and prospective tenants. By doing so, ESM, Camellia, and Food Lion knowingly caused circumstances and conditions at the Pines Plaza shopping center to change for the worse, such that the vacancy of the "anchor unit" previously occupied by the open and operating Fresh Pride store caused other existing tenants to lose business and revenue from lower consumer "traffic" through the shopping center, and to breach their respective leases with Plaintiffs (by, among other things, failing to pay all rent coming due). As a result of the intentional conduct of ESM, Camellia, and Food Lion, as alleged above, Plaintiff has experienced increasing difficulty attracting prospective tenants to the Pines Plaza shopping center, and marketing vacant units to prospective tenants, resulting in a reduced occupancy rate and lower rental and other revenue and income derived by Plaintiffs from the operation and ownership of the Shopping Center. In addition, as a result of the intentional conduct of ESM, Camellia, and Food Lion, as alleged above, and the resulting lower occupancy rates and worse financial performance of the shopping center, the market value of the Pines Plaza property has been diminished.

36. As natural, direct, and proximate result of such conduct by Defendants, and each of them, Plaintiffs have suffered and will continue to suffer damages and losses.

WHEREFORE, Plaintiffs demand judgment against Defendants, Food Lion, ESM, and

Camellia, jointly and severally, for compensatory damages in the amount of $750,000.00, punitive damages in the amount of $1,000,000.00, plus interest and reasonable attorney's fees, and for such other and further relief as this Honorable Court deems just and proper.

## COUNT VI
### Violation of Maryland Antitrust Act
### Md. Code, Commercial Law Article, §11-201, et seq.
(against all Defendants)

37.  Plaintiffs incorporate by reference the allegations in paragraphs 1 through 36 of the Complaint, as if fully re-stated and re-alleged herein.

38.  The Maryland Antitrust Act, Section 11-201, et seq., of the Commercial Law Article of the Maryland Code, was enacted to promote, to the fullest extent practicable, fair and honest competition, free of conspiracies, combinations, or agreements which unreasonably and/or improperly restrain or restrict trade or commerce.

39.  The Maryland Antitrust Act specifically and expressly prohibits (and makes unlawful): any contract, combination, agreement, conspiracy, or arrangement between two or more persons which unreasonably restrains trade or commerce; and any monopolization of or attempt to monopolize, or combination or conspiracy with another to monopolize any part of the trade or commerce within the State, for the purpose of excluding competition or controlling trade or commerce within a particular area.

40.  The contract, combination, agreement, conspiracy, and/or arrangement between Defendants, as alleged above, unreasonably restrains trade or commerce and wrongfully seeks to monopolize, dominate, or control, and/or monopolizes, dominates, or controls, a part of the trade or commerce within the State (specifically, the grocery store/supermarket industry or market in

14

Ocean Pines, Maryland), in violation of the Maryland Antitrust Act. Defendants knowingly and intentionally, and with actual malice toward Plaintiffs and an intent to harm them, entered into the unlawful contract, combination, agreement, conspiracy, and/or arrangement, and as a result thereof, Plaintiffs have suffered and will continue to suffer an antitrust injury in the form of economic and financial losses in regard to the operation, performance, marketability, and value of the Pines Plaza shopping center. Plaintiffs, as long-standing landlords of Camellia and ESM and as owners or a shopping center housing a supermarket, are and have been market participants in the grocery store/supermarket industry, and in any event Plaintiffs are in the "target area" of the wrongful, anti-competitive conduct of Defendants.

WHEREFORE, Plaintiffs demand judgment against Defendants, Food Lion, ESM, and Camellia, jointly and severally, for compensatory damages in the amount of $750,000.00, treble damages pursuant to Md. Code, *Commercial Law*, §11-209(b)(4), and punitive damages in the amount of $1,000,000.00, plus interest, reasonable attorney's fees and other litigation expenses, and for such other and further relief as this Honorable Court deems just and proper.

### COUNT VII
### Disgorgement of Ill-Gotten Gains
### (against ESM and Camellia)

41. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 40, as if fully re-stated and re-alleged herein.

42. Upon information and belief, Defendants Camellia and/or ESM received from Food Lion a significant monetary payment, in excess of $800,000.00, in consideration for entering into the unlawful, improper, and actionable contract, combination, agreement, conspiracy, and/or arrangement described in paragraphs 17 - 18 and 40 of the Complaint. Such

contract, combination, agreement, conspiracy, and/or arrangement constitutes a violation of the Maryland Antitrust Act, tortious interference with contractual and business relations, civil conspiracy, breach of contract, and breach of fiduciary duty by ESM, Camellia, and/or Food Lion.

43. Based on the aforesaid circumstances, the payment made to Defendants ESM and Camellia by Food Lion, upon information and belief, should be disgorged from ESM and Camellia and paid to Plaintiffs, who have suffered and will continue to suffer damages and losses as a result of the wrongful, unlawful, and actionable conduct of Defendants, as alleged in the Complaint and herein.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court disgorge Defendants ESM and Camellia of a sum equal to the amount paid to them by Food Lion, which upon information and belief is in excess of $800,000.00, and that such sum be paid by Defendants ESM and Camellia to Plaintiffs, as damages for Defendants' wrongful, unlawful, and actionable conduct.

AYRES, JENKINS, GORDY & ALMAND, P.A.

By: _____
Bruce F. Bright
6200 Coastal Highway, Suite 200
Ocean City, Maryland 21842
410-723-1400
*Attorneys for Plaintiffs*

## DEMAND FOR TRIAL BY JURY

Now come Plaintiffs, by and through their undersigned attorney, and hereby demand trial by jury as to all claims and issues in this case that are triable as of right by jury.

_____
Bruce F. Bright

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 31st day of January, 2011, a copy of the foregoing Plaintiffs' Amended Complaint (with attached Exhibits and "red-line" version showing changes) was served, via first class mail, postage prepaid, on: James L. Otway, Esq., Otway Russo, P.O. Box 4096, Salisbury, Maryland, 21803-4096; and Sandford A. Friedman, Esq., 1050 17th Street, N.W., Suite 400, Washington, D.C., 20036-5521.

_____
Bruce F. Bright