IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BERKLEY TRACE, LLC, *et al.*,   *

    Plaintiffs,   *

       v.   *   Civil Action No. RDB-11-03207

FOOD LION, LLC, *et al.*,   *

    Defendants.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM OPINION**

Plaintiffs Berkley Trace, LLC ("BT") and the Hampton Company, Inc. ("Hampton") (collectively "Plaintiffs") initially brought this breach of contract and civil conspiracy action against Food Lion, LLC ("Food Lion"), Camellia Food Stores, Inc. ("Camellia") and Eastern Shore Markets, Inc. ("ESM") (collectively "Defendants") in the Circuit Court for Worcester County, Maryland. Ultimately, Defendant Food Lion removed this action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441(a) and 1446. Following a period of discovery and certain settlement negotiations, Plaintiffs filed a Stipulation of Dismissal as to all Counts asserted against Defendant Food Lion. As a result, Plaintiffs claims against Defendant Food Lion were dismissed with prejudice. The only remaining claim at this time alleges breach of contract against Defendants Camellia and ESM. Specifically, Plaintiffs contend that Defendants Camellia and ESM breached the business operation terms of their commercial lease by closing the "Fresh Pride" grocery

1

store they had agreed to operate on the Pines Plaza Shopping Center from February 2008 until the end of the Lease term on March 31, 2011.

Pending before this Court is Plaintiffs' Motion for Summary Judgment (ECF No. 94). Also pending is Defendants Camellia and ESM's Cross-Motion for Summary Judgment (ECF No. 95). The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Plaintiffs Berkeley Trace, LLC and The Hampton Company, Inc.'s Motion for Summary Judgment (ECF No. 94) is GRANTED. Defendants Camellia Food Stores, Inc. and Eastern Shore Markets, Inc.'s Cross-Motion for Summary Judgment (ECF No. 95) is DENIED.

## BACKGROUND

Plaintiff Berkley Trace, LLC ("BT") is a New Jersey limited liability company, registered to do business in the State of Maryland, with its principle place of business in Woodbury, New Jersey. Pls.' Second Am. Compl. ¶ 1, ECF No. 75. Plaintiff The Hampton Company, Inc. ("THC") is a Maryland corporation with its principle place of business in Baltimore, Maryland. *Id.* ¶ 2. Plaintiffs are, and at all times relevant to the Complaint were, "the owners and operators of certain real property and improvements located on Cathell Road in Ocean Pines, Maryland, known . . . as the 'Pines Plaza Shopping Center' " ("Pines Plaza"). *Id.* ¶ 6.

In 1985, Plaintiffs and their predecessors-in-title entered into a lease agreement ("Lease") with Defendant Eastern Shore Markets, Inc. ("ESM") for the lease of space at Pines Plaza. Lease, ECF No. 94-2. Defendant ESM is a wholly owned subsidiary of

Defendant Camellia Food Stores, Inc. ("Camellia"). Saunders[1] Aff. ¶ 2, ECF No. 95-6. "The original lease term was ten years with the option for four renewal periods of five years." Lease § 2.1. On April 29, 2002, the Lease was amended to include two five year optional renewal terms, one commencing on April 1, 2006 and expiring on March 31, 2011, the other commencing on April 1, 2011 and expiring on March 31, 2016. Am. to Lease § 2, ECF No. 94-3. Article III of the Lease sets forth the use of premises terms and the liquidated damages clause. Lease §§ 3.1-3.4. Specifically, in signing the Lease, ESM agreed that:

> 3.1 The premises shall be occupied and used by Tenant solely for the operation of a grocery supermarket and for no other purpose whatsoever. Tenant shall conduct its business in the Premises under the trade name Meatland and no other trade name without the consent of Landlord. Tenant shall use only such minor portions of the Premises for storage and office purposes as are reasonably required therefor. The aforesaid specific use is a material covenant and consideration to Landlord to maintain an appropriate tenant mix in the Center and to achieve maximum Gross Sales for all Tenants.
> 3.2 Tenant shall cause its business to be conducted and operated in good faith and with adequate staff and merchandise and otherwise in such manner as will assure the transaction of the maximum volume of business in or from the Premises as a further material covenant and consideration of the Lease. Tenant shall cause the Premises to be open for business during the hours established by Landlord and otherwise in accordance with the rules and regulations established by Landlord for the Center.
> 3.3 Throughout the Lease Term, the decor and fixturing of the Premises, Tenant's merchandise and the operation of Tenant's business conducted in the Premises shall be consistent with the operation of a "first class," "high quality" store or business as those standards of operation may be interpreted from time to time by Landlord, in its sole discretion, in order to enhance the image of the Center as a whole and its reputation as a dignified place to shop. The foregoing description is not intended by

---

[1] Richard A. Saunders is the President and a Member of the Board of Directors of Camellia Food Stores, Inc. and Eastern Shore Markets, Inc. Saunders Aff. ¶ 1, ECF No. 95-6.

> Landlord and will not be enforced to affect the retail selling price of Tenant's merchandise or service.
> 3.4 If Tenant shall fail to operate its business in the premises in accordance with Section 3.1, 3.2, 3.3, and any other provision of this Lease or the rules and regulations established by Landlord, then Landlord, in addition to any other remedy available to Landlord under this Lease, Tenant shall pay to Landlord as liquidated damages for such a breach, a sum equal to $100.00 for each day Tenant fails to so operate.

*Id.* Moreover, the Lease provides that the Tenant will be in default where Tenant "vacat[es] or abandon[s] . . . the Premises . . . or fail[s] . . . to be open for business (except in the vent of damage or destruction to the Premises which prevents Tenant from conducting any business thereon) for more than five (5) days." *Id.* § 18.1(a). Where the Tenant abandons the Premises, "Landlord shall be entitled to enforce all Landlord's rights and remedies under this Lease, including the right to receive the rent and any other charges as may become due hereunder." *Id.* §18.2(b). In accordance with the Lease and its Amendments, Defendant ESM operated a grocery store at Pines Plaza under the name "Fresh Pride" from 1985 until 2008. Defs.' Answer to Second Am. Compl. ¶ 10, ECF No. 81.

In or about 2007, Food Lion, LLC ("Food Lion") opened a store location in Ocean Pines, Maryland, at a shopping center known as Pennington Commons, located within a short distance of Pines Plaza. *Id.* at ¶ 11. The Food Lion store was in direct competition with the Fresh Pride store. *Id.* According to Defendants, the Food Lion store's opening caused Fresh Pride's contribution to go from positive $892,562.00 in 2006 to negative $164,750.00 during fiscal year 2007 and negative $189,508.00 for the first six months of fiscal year 2008. Proposed Pre-Trial Order at 3, ECF No. 98. As a result, "in January 2008, Camellia and ESM entered into a written agreement with Food Lion under which Food Lion

4

agreed to pay a substantial sum of money to Camellia and ESM, in exchange for [their] promise to close" the Ocean Pines Fresh Pride. Defs.' Answer to Second Am. Compl. ¶ 17. Food Lion would have given Camellia and ESM additional funds "if the Landlord had been willing to enter into the lease termination agreement." *Id.* As such, as of February 4, 2008, the Fresh Pride store at Pines Plaza was closed. *Id.* ¶ 18. From February 4, 2008 to the termination of the Lease on March 31, 2011, ESM continued to pay rent and reimbursable charges to Plaintiffs. Saunders Aff. ¶ 3. "The total rent and reimbursable charges [for that period] . . . equaled $642,759.00." *Id.* Additionally, the parties agree that 1,151 days elapsed from the closing of the Fresh Pride store on February 4, 2008 until the termination of the Lease on March 31, 2011. Defs.' Resp. to Pls.' Statement of Undisputed Facts ¶ 13, ECF No. 95-3.

Plaintiffs initially filed this action on November 12, 2010 in the Circuit Court for Worcester County. Pls.' Compl., ECF No. 2. The Complaint alleged claims for breach of contract and breach of fiduciary duty against ESM and Camellia, Tortious Interference with Contractual Relations against Food Lion, and Civil Conspiracy, Tortious Interference with Contractual and Business Relations as well as violation of the Maryland Antitrust Act against all Defendants. *Id.*. In their First Amended Complaint, Plaintiffs included an additional claim for Disgorgement of Ill-Gotten Gains against ESM and Camellia. Pls.' First Am. Compl., ECF No. 13. Three days short of a year later, Defendant Food Lion removed this action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a), 1441 and 1446. Notice of Removal, ECF No. 1. Plaintiffs later filed a Second Amended

5

Complaint alleging breach of contract against ESM and Camellia (Count I), Civil Conspiracy against all Defendants (Count II) and Tortious Interference with Contractual Relations against Food Lion (Count IV).[2] Pls.' Second Am. Compl., ECF No. 75. Following a period of discovery, Food Lion and Plaintiffs settled and Plaintiffs filed a stipulation of dismissal as to Defendant Food Lion as well as Counts II and IV. Stipulation, ECF No. 85. The only remaining claim pending before this Court is Plaintiffs' Breach of Contract claim set forth in Count I against Defendants ESM and Camellia. Plaintiffs seek to recover $115,100.00 in light of Defendants' alleged violation of the liquidated damages provision included in the Lease as well as reasonable attorneys' fees. Pls.' Statement of Undisputed Facts ¶¶ 13-14, ECF No. 94-1.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to

---

[2] When filing the Second Amended Complaint, Plaintiffs deleted Count III asserting Breach of Fiduciary Duty against Defendants ESM and Camellia but did not, however, relabel Count IV as Count III. Pls.' Second Am. Compl. at 11, ECF No. 75.

warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

When both parties file motions for summary judgment, as here, the court applies the same standards of review. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); *ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to resolve genuine issues of material fact on a motion for summary judgment-even where . . . both parties have filed cross motions for summary judgment.") (emphasis omitted). The role of the court is to "rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." *Towne Mgmt. Corp. v. Hartford Accident & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985). The court must therefore "evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration." *Bd. of Educ. of Frederick Cnty. v. I.S.*, 325 F. Supp. 2d 565, 578 (D. Md. 2004) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). "[B]y the filing of a motion [for summary judgment] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967); *see also McKenzie v. Sawyer*, 684 F.2d 62, 68 n.3 (D.C. Cir. 1982) ("[N]either party waives the right to a full trial on the merits by filing its own motion."). However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they "may be probative of

7

the non-existence of a factual dispute." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983) (citation omitted).

ANALYSIS

Plaintiffs Berkeley Trace, LLC ("BT") and The Hampton Company, Inc. ("Hampton") (collectively "Plaintiffs") have filed for summary judgment on the grounds that no issues of material fact remain and the liquidated damages provision is valid and enforceable against both Defendants Camellia Food Stores, Inc. ("Camellia") and Eastern Shore Markets, Inc. ("ESM") (collectively "Defendants"). Conversely, Defendants contend that summary judgment should be entered in their favor because: (1) the liquidated damages provision is an unenforceable penalty, (2) liquidated damages were not specifically pleaded in Plaintiffs' Complaint and subsequent amendments, and (3) the election of remedies doctrine precludes the recovery of both actual and liquidated damages. Additionally, Defendants contend that the Lease cannot be enforced against Camellia as it is ESM's parent company, and as Camellia was not a party to the Lease. Finally, Defendants contend that even if the liquidated damages clause were valid and enforceable, Defendants' assertion of the defense of impracticability of performance/frustration of purpose creates a genuine issue of material fact precluding the entry of summary judgment.[3]

---

[3] In a telephone conference conducted on the record on July 15, 2013, Counsel for the parties agreed with the Court's summary of the procedural posture of this case, and noted there is only one possible dispute with respect to any factual issue. Counsel concurred that all issues related to the liquidated damages clause are legal issues. Counsel for the Defendants asserted that the defense of impracticability of performance may create a factual issue.

## A. Liquidated Damages Clause

This Court, sitting in diversity, will apply Maryland contract law in deciding this breach of contract dispute.[4] "Whether a contract provision is a penalty or a valid liquidated damages clause is a question of law." *Barrie Sch. v. Patch*, 933 A.2d 383, 388 (Md. 2007). The Maryland Court of Appeals has defined a liquidated damages clause as "a specific sum of money . . . expressly stipulated by the parties to a . . . contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." *Mass. Indem. & Life Ins. v. Dresser,* 306 A.2d 213, 216 (Md. 1973). "It has long been the rule in Maryland that valid liquidated damages provisions are enforceable." *Barrie*, 933 A.3d at 388. However, "a clause purporting to provide liquidated damages will be deemed invalid as a penalty where the amount agreed upon is grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from such breach of the contract." *Id.* at 389-90 (citing *Balto. Bridge Co. v. United Rys. & Elec. Co. of Balto.*, 93 A. 420, 422 (Md. 1915)). Whether a liquidated damages clause is valid and enforceable or a penalty is "determined from the contract itself, its subject-matter and the surrounding facts and circumstances connected therewith with which the parties are confronted at the time of its execution." *Balto. Bridge Co.*, 93 A. at 422-23. "[I]f there is doubt whether a contract provides for

---

[4] Under Maryland choice of law principles, the "place of contracting" or *lex loci contractus* determines which state law to apply. *See Rousse Co. v. Fed. Ins. Co.*, 991 F. Supp. 460, 462 (D. Md. 1998) (citing *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 659 A.2d 1295, 1300 (Md. 1995)). "Under the *lex loci* principle, a contract is 'made' where the last act necessary for its formation is performed." *Id.* (citing *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 215 A.2d 467 (Md. 1965)). The contract was formed in Maryland and the parties have agreed that Maryland law is applicable.

liquidated damages or a penalty, the provision will be construed as a penalty." *Barrie*, 933 at 390 (quoting *Goldman v. Conn. Gen. Life Ins. Co.*, 248 A.2d 154, 158 (Md. 1968)).

In Maryland, there is a three part test for a court to apply to determine the validity of a liquidated damage clause. *See Holloway v. Faw, Casson & Co.,* 572 A.2d 510, 525 (Md. 1990) (citing *Mass. Indem. & Life Ins. Co. v. Dresser,* 306 A.2d 213, 216 (Md. 1973)):

> First, such a clause must provide in clear and unambiguous terms for a certain sum. Secondly, the liquidated damages must reasonably be compensation for the damages anticipated by the breach. Thirdly, liquidated damage clauses are by their nature mandatory binding agreements before the fact which may not be altered to correspond to actual damages determined after the fact.

*See id.* (internal citations and quotations omitted) (finding a valid liquidated damages clause). As such, "Maryland Courts will uphold a liquidated damages clause as valid, and not a penalty, if it satisfies two primary requirements[: (1)] the clause must provide a fair estimate of potential damages at the time the parties entered into the contract . . . [and (2)] the damages must have been incapable of estimation, or very difficult to estimate, at the time of contracting." *Barrie*, 933 A.2d at 390 (citations omitted). Whether the amount specified is a penalty or liquidated damages is to be determined *as of the time of execution of the contract. See Bd. of Educ. of Talbot Cnty. v. Heister*, 896 A.2d 342, 353 (Md. 2006) (emphasis added). The party challenging the enforceability of a liquidated damages clause bears "the burden of proving that the clause should not be enforced." *Barrie*, 933 A.2d at 388.

In this case, the liquidated damages provision in the lease provides as follows:

> 3.4 If Tenant shall fail to operate its business in the premises in accordance with Section 3.1, 3.2, 3.3, and any other provision of this Lease or the rules and regulations established by Landlord, then Landlord, in

addition to any other remedy available to Landlord under this Lease, Tenant shall pay to Landlord as liquidated damages for such a breach, a sum equal to $100.00 for each day Tenant fails to so operate.

Applying the test to the case *sub judice* it is undisputed that the Lease provided for an amount of $100 per day for each day Defendant ESM failed to operate according to the business operation covenants of the Lease and any other provision of the Lease. Furthermore, it is undisputed that 1,151 days elapsed from the closing of the Fresh Pride store on February 4, 2008 until the termination of the Lease on March 31, 2011. Per diem liquidated damages clauses have "frequently been sustained, where not out of proportion to the damages that might reasonably be anticipated." *H. J. McGrath Co. v. Wisner*, 55 A.2d 793, 795 (Md. 1947) (citations omitted); *see also Ecology Servs., Inc. v. GranTurk Equip., Inc.*, 443 F. Supp. 2d 756, 772 (D. Md. 2006). Accordingly, the first prong of the liquidated damages test is satisfied as the clause provides "in clear and unambiguous terms for a certain sum." *Holloway*, 572 A.2d at 525.

According to the Lease, the liquidated damages contemplate Plaintiffs' compensation for Defendant's breach of the "material covenant and consideration to Plaintiffs" aimed at maintaining an "appropriate tenant mix" in Pines Plaza and achieving "maximum Gross Sales for all Tenants." Lease § 3.1. The other operation provisions ensure that Defendant operates a "first-class," "high-quality" grocery store in good faith. Moreover, the liquidated damages provision requires the additional breach of "any other provision of the Lease or the rules and regulations established by Landlord" in order to be triggered. Lease § 3.4. As such, it is clear that the exact amount of money a breach by Defendant would cost Plaintiffs

11

was difficult to estimate at the time of contracting. The amount of $100 per day does not seem excessive. Accordingly, the Lease contains a reasonable amount in light of the anticipated harm caused by ESM's breach and the second prong of the liquidated damages test is met.

Finally, in examining the third factor this Court must determine whether the liquidated damages clause is a mandatory binding agreement before the fact which may not be altered to correspond to actual damages determined after the fact. Plaintiffs are not trying to alter the provisions of the liquidated damage amount to account for its actual damages. This is an agreed upon before the fact clause. As such, the third factor is satisfied and the liquidated damages clause is valid and enforceable.

While Defendants contend that this provision is "a penalty because it provides for liquidated damages for any alleged breach or any violation of the lease, or any violation of the rules and regulations," Defs.' Reply in Opp. to Summ. J. at 3, ECF No. 97, this is an inaccurate reading of the clause. The provision explicitly requires a breach of the operation covenants contained in "Section 3.1, 3.2, 3.3 *and* any other provision of this Lease or the rules and regulations established by Landlord." Lease § 3.4. Plaintiffs contend that in addition to breaching the operation covenants, ESM breached Section 18.1(a) of the Lease which prohibits the Tenant from vacating or abandoning the premises for more than five days absent the "event of damage or destruction of the Premises." Lease § 18.1(a). In this case, the record is clear that following an agreement between ESM, Camellia and Food Lion, Defendants ESM and Camellia elected to close the Fresh Pride store. Additionally, the store

was continuously closed from February 4, 2008 until the end of the Lease term on March 31, 2011, for a total of 1,151 days. As a result, Sections 3.1, 3.2, 3.3 and 18.1(a) of the Lease were breached, thereby triggering the liquidated damages clause.

Nevertheless, Defendants contend that the liquidated damages clause is unenforceable against Defendant Camellia because, while the parent corporation of ESM, it was not a party to the Lease. The United States Court of Appeals for the Fourth Circuit has stated that "[a]lthough accorded the 'greatest judicial deference,' the fiction of corporate separateness is not sacrosanct." *Johnson v. Flowers Indus. Inc.*, 814 F.2d 978, 981 (4th Cir. 1987). Though not dispositive, the Fourth Circuit has articulated that the following four factors are relevant for assessing the degree of a parent's control over its subsidiary: "(1) the interrelation of operations[,] (2) centralized control of labor relations[,] (3) common management[,] and (4) common ownership of financial control." *Id.* at n. *. The touchstone of both inquiries is substantial parental domination of the subsidiary. *Id.* Additionally, the Fourth Circuit noted that "several factors 'guide the determination of whether one entity constitutes the alter ego of another' . . . [such as *inter alia*] overlap in ownership, officers, directors, and other personnel; common office space; the degrees of discretion shown by the allegedly dominated corporation; and whether the dealings of the entities are at arm's length." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 544 (4th Cir. 2013) (quoting *Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.*, 160 F.3d 170, 174 (4th Cir. 1998) (other quotations omitted).

In this case, Defendants have agreed that ESM and Camellia were acting together when both entered into the agreement with Food Lion to close the Fresh Pride store in exchange for a substantial sum of money. Defs.' Answer to Second Am. Compl. ¶ 17, ECF No. 81. Additionally, the record reflects that Ed Dery, President of Camellia, was also President of ESM and executed an Amendment to the Lease in that capacity in 2002. *See* Am. to Lease at 4, ECF No. 94-3; Jan. 15, 2008 Fax from Ed Dery to Ray Guidice, ECF No. 94-4. Ed Dery, as president of Camellia, met and negotiated the deal with Food Lion to close the Fresh Pride at Pines Plaza. *See* Sept. 5, 2007 email from Ed Dery to Thomas Grasberger, ECF No. 94-11. Moreover, it was Ed Dery, acting as Camellia's president who closed the Fresh Pride store and informed Plaintiffs of its closure. *See* Jan. 15, 2008 Fax. In his deposition, Richard Saunders, who attests to being President and Board member of both Camellia and ESM in his affidavit, testified that the financial accounting and reporting for both companies is fully consolidated. Saunders Dep. at 133-138, ECF No. 96-4; Saunders Aff. ¶ 1, ECF No. 95-6. Additionally, Richard Saunders testified that it was Camellia who notified Plaintiffs that it was surrendering possession of the Premises in 2011. Saunders Dep. at 141. Finally, Saunders testified that Camellia's board gave Ed Dery "the authority to try to work out the best deal" with Food Lion. *Id.* at 87. Accordingly, Camellia exercised a significant amount of dominion and control over its wholly-owned subsidiary specifically with respect to the Fresh Pride store and the agreement with Food Lion. As a result, the liquidated damages clause is enforceable against both Defendants ESM and Camellia.

**B.     Defense of Impracticability of Performance**

Even if the liquidated damages clause is found to be enforceable, Defendants contend that summary judgment cannot be entered in favor of Plaintiffs at this time because they have raised impracticability of performance/frustration of purpose as a defense which creates a genuine issue of material fact. Specifically, Defendants argue that the negative store contributions during fiscal year 2007 and the first six months of fiscal year 2008 made it impossible for them to continue to operate the Fresh Pride store.

Section 261 of the Restatement (Second) of Contracts defines the impracticability of performance defense as:

> "Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary."

RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981). The Fourth Circuit has held that "a party relying on the defense of impossibility of performance must establish (1) the unexpected occurrence of an intervening act, (2) such occurrence was of such a character that its non-occurrence was a basic assumption of the agreement of the parties, and (3) that occurrence made performance impracticable." *Opera Co. of Boston, Inc. v. Wolf Trap Found. For Performing Arts*, 817 F.2d 1094, 1102 (4th Cir. 1987). However, the Maryland Court of Appeals has held that "the financial inability of one of the contracting parties to meet the contract price is [not] an adequate ground upon which to grant rescission of a contract on the basis of impossibility of performance." *Baldi Constr. Eng'g, Inc. v. Wheel Awhile, Inc.*, 284

A.2d 248, 249 (Md. 1971). As Defendants' legal impossibility of performance defense is based on their financial inability to perform the contract, Defendants' defense cannot stand. Moreover, the Court notes that when opening a grocery store, it is foreseeable that competition from existing or future stores might affect the performance and revenues of the grocery store. As such, even if financial inability to perform were a ground upon which to assert the legal impossibility defense, Defendants would not be able to establish the first and second elements of the defense. Accordingly, Defendants' assertion of the impracticability of performance/frustration of purpose defense does not create a genuine issue of material fact precluding the entry of summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### C. Remaining Miscellaneous Arguments

Defendants' remaining legal arguments against Plaintiffs' motion for summary judgment simply lack merit. First, Plaintiffs' Complaint and subsequent amendments clearly state a claim for breach of the liquidated damages clause in Count I against Defendants ESM and Camellia. Although Plaintiffs do not use the term "liquidated damages," their claim specifically refers to a breach by Defendants of each element of the liquidated damages clause and the additional provision of the Lease. Moreover, liquidated damages are not special damages under Rule 9(g) of the Federal Rules of Civil Procedure. Special damages are "those elements of damages that are the natural, but not the necessary or usual consequence of the defendant's conduct." WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1310, at 347 (3d ed. 2004). The United States Court of Appeals for the

Seventh Circuit has held that "[t]he usual consequences of a wrong are 'general' damages, and unusual consequences are 'special.' " *Neal v. Honeywell, Inc.*, 191 F.3d 827, 832 (7th Cir. 1999). Liquidated damages are not unusual as they are contracted for *ex ante* by the parties. Significantly, the United States District Court for the Northern District of Illinois has held that "Rule 9(g) does not require specificity in pleading liquidated damages." *Local 705 Bhd. of Teamsters Pension Fund v. Special Serv. Co.*, 2009 WL 1956720, at * 2 (N. D. Ill. July 8, 2009). Similarly, this Court holds that Plaintiffs have sufficiently alleged a claim for liquidated damages, which need not be specifically pleaded under Rule 9(g) of the Federal Rules of Civil Procedure.

Second, Defendants claim that given the amount recovered by Plaintiffs in their settlement with Food Lion and the rent and reimbursable fees already paid by Defendants ESM and Camellia pursuant to the Lease, permitting Plaintiffs to recover liquidated damages would amount to impermissible double recovery. Defendants also contend that the election of remedy doctrine precludes Plaintiffs' recovery of liquidated damages. Under the " 'one wrong, one recovery rule,' a party may not recover twice for one injury, even if the party asserts multiple, consistent theories of recovery." *Clancy v. Skyline Grill, LLC*, 2012 WL 5409733, at *5 (D. Md. 2012); *see also United States v. Rachel*, 289 F. Supp. 2d 688, 697 (D. Md. 2003) ("The one wrong, one recovery rule precludes a party from double recovery for a single injury."). With respect to the election of remedies doctrine, this Court has previously held that:

> Maryland recognizes the election of remedies doctrine which precludes a claimant from seeking multiple redress for a single wrong. *Shallow Run Ltd.*

17

> *P'ship v. State Highway Admin.*, 686 A.2d 1113 (Md. App. 1996). Proper application of this doctrine requires that (1) the remedies available to a party must be coexisting and inconsistent; (2) the party must actually bring an action seeking one of the remedies available to [it]; and (3) [the party] must pursue the action to final judgment. *See Haynie v. National Gypsum Corp.*, 490 A.2d 724 (Md. App. 1985); *Hertz v. Mills*, 10 F. Supp. 979 (D. Md. 1935). Thus, the doctrine applies only where the remedies are inconsistent, not merely concurrent or cumulative. *Shoreham Developers, Inc. v. Randolph Hills, Inc.*, 305 A.2d 465 (Md. 1973). As the party seeking summary judgment, Defendants have the burden of proving the satisfaction of each element of the affirmative defense. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

*Hogue v. Sam's Club*, 114 F. Supp. 2d 389, 392-93 (D. Md. 2000). Defendants have failed to demonstrate that Plaintiffs' liquidated damages are "coexisting and inconsistent" with their recovery under the default provisions of the Lease[5] and the settlement agreement with Food Lion. There is no dispute that the Defendants Camellia and ESM breached the operation covenants and left the store premises vacant for over three years. The payment of rent and charges to the Plaintiffs in no way invalidated the default provisions of the Lease and the liquidated damages clause providing for payment of $100 per day for each day in which the Defendants failed to operate a business operation. Accordingly, Defendants have failed to meet their burden under the election of remedy defense.

In sum, the liquidated damages clause is valid and enforceable. Defendants Camellia and ESM clearly breached the operation covenants of Article III and the default provision in

---

[5] Specifically, the Lease provides that in the event of a default by Tenant, Landlord may "Maintain Tenant's right to possession, in which case this Lease shall continue in effect whether or not Tenant shall have abandoned the Premises. In such event Landlord shall be entitled to enforce all Landlord's rights and remedies under this Lease, including the right to receive the rent and any other charges as may become due hereunder." Lease § 18.2(b).

Section 18.1(a) of the Lease. Accordingly, Plaintiffs are entitled to summary judgment against Defendants Camellia and ESM.

## CONCLUSION

For the reasons stated above, Plaintiffs Berkeley Trace, LLC and The Hampton Company, Inc.'s Motion for Summary Judgment (ECF No. 94) is GRANTED. Defendants Camellia Food Stores, Inc. and Eastern Shore Markets, Inc.'s Cross-Motion for Summary Judgment (ECF No. 95) is DENIED.

A separate Order follows.

Dated: July 18, 2013 /s/_____
Richard D. Bennett
United States District Judge