IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BERKLEY TRACE, LLC, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-11-03207 |
| FOOD LION, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM ORDER**

Plaintiffs Berkley Trace, LLC ("Berkley Trace") and the Hampton Company, Inc. ("Hampton") (collectively "Plaintiffs") brought this breach of contract and civil conspiracy action against Food Lion, LLC ("Food Lion"), Camellia Food Stores, Inc. ("Camellia"), and Eastern Shore Markets, Inc. ("ESM"). The allegations arose out of a commercial lease agreement between the Plaintiffs and Defendants Camellia and ESM. Specifically, the Plaintiffs alleged that Camellia and ESM, in concert with Food Lion, closed the "Fresh Pride" grocery store which they had agreed to operate in the Pines Plaza Shopping Center in Ocean Pines, Maryland. It was alleged that this action was in breach of the business operation terms of their commercial lease. Pursuant to a settlement agreement, the claims against Food Lion were dismissed with prejudice.[1] Upon review of cross-motions for summary judgment, this Court entered an Order dated July 18, 2013 granting summary judgment in favor of the Plaintiffs on their claim for breach of contract against Defendants Camellia and ESM. Pending before this Court is Plaintiffs' Petition for Award of Attorneys'

---

[1] *See* Order Granting Stip. of Dismissal, ECF No. 85.

Fees and Costs (ECF No. 102) ("Motion"). The parties' submissions have been reviewed and no hearing is necessary.[2] *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Plaintiffs' Motion (ECF No. 102) is GRANTED in the amounts of $50,000.00 in attorneys' fees and $17,170.05 in expenses.

## BACKGROUND

The facts of this case were set forth in detail in this Court's Memorandum Opinion of July 18, 2013. (ECF No. 100.) For present purposes, a brief summary will suffice.

The Plaintiffs were at all times relevant to this case the owners and operators of the "Pines Plaza Shopping Center" ("Pines Plaza") in Ocean Pines, Maryland. Beginning in 1985, the Plaintiffs and the Defendants[3] were parties to a lease agreement (the "Lease") for space at Pines Plaza. Over the years, the parties amended and renewed the Lease; the relevant Lease term commenced April 1, 2006 and expired March 31, 2011. The Lease required that the Defendants operate a grocery supermarket in the space for the duration of the Lease term. The supermarket was to operate in a "first class" manner in order to "assure the transaction of the maximum volume of business" at Pines Plaza as a whole. The Lease provided that in the event the Defendants failed to operate the supermarket as required by the Lease, the Plaintiffs would be entitled to liquidated damages of $100.00 for each day that the Defendant failed to do so. In addition, the Lease provided that the Defendants would

---

[2] The Defendants filed a Surreply (ECF No. 111) without seeking leave to do so, in violation of Local Rule 105.2. The Surreply does not contain any legal or factual information not already available to this Court, and has been rejected by the Clerk's Office as improperly filed. Accordingly, this Court need not consider the Defendants' Surreply, and the Plaintiffs' Motion to Strike Surreply (ECF No. 112) is DENIED AS MOOT.

[3] ESM is a wholly-owned subsidiary of Camellia.

be in default if they failed to be open "for more than five (5) days." Lease § 18.1(a). If the Defendants abandoned the space, the Plaintiffs could enforce all "rights and remedies under this Lease, including the right to receive the rent and any other charges as may become due hereunder." *Id.* § 18.2(b). In accordance with the Lease, Defendant ESM operated a grocery store at Pines Plaza under the name "Fresh Pride" from 1985 until 2008.

In or about 2007, Food Lion opened a store in Ocean Pines at a nearby shopping center known as Pennington Commons. The competition from the new Food Lion store caused the Fresh Pride grocery store in the Pines Plaza Shopping Center to rapidly lose business to the point where it was no longer profitable. As a result, in January 2008, Camellia and ESM entered a written agreement with Food Lion, wherein Food Lion would pay Camellia and ESM to close Fresh Pride. The Fresh Pride store closed on February 4, 2008, but ESM continued to pay rent and reimbursable charges to the Plaintiffs until the termination of the Lease on March 31, 2011. This amounted to total payments of $642,759.00. The parties agree that the store remained closed for 1,151 days during that period.

The Plaintiffs originally filed this action in the Circuit Court for Worcester County, Maryland, and Food Lion removed the case to this Court. The Plaintiff filed a Second Amended Complaint which alleged breach of contract against ESM and Camellia (Count I), civil conspiracy against ESM, Camellia, and Food Lion (Count II), and tortious interference with contractual relations against Food Lion (Count IV).[4] Pls.' Second Am. Compl., ECF

---

[4] When filing the Second Amended Complaint, Plaintiffs deleted Count III asserting breach of

No. 75. Following a period of discovery, the Plaintiffs and Food Lion settled, and the claims in Counts II and IV against Food Lion were dismissed with prejudice on December 20, 2012. *See* Order Granting Stip. of Dismissal, ECF No. 85. The claim for civil conspiracy in Count II as against ESM and Camellia was also dismissed. *Id.* In connection with the settlement, the Plaintiffs' attorneys received a contingent fee payment of $76,500.00.[5]

As to the sole remaining claim for breach of contract against Defendants Camellia and ESM set forth in Count I of the Second Amended Complaint, the parties filed cross-motions for summary judgment. The Plaintiffs, in their motion for summary judgment, sought liquidated damages and attorneys' fees. In a teleconference held on July 15, 2013, the Plaintiffs agreed that their motion for summary judgment raised purely legal issues. *See* Letter Order of July 15, 2013, ECF No. 99. The Defendants also agreed that only legal issues remained before this Court to the extent that the cross-motions were resolved in Defendants' favor. However, the Defendants argued that the defense of impracticability of performance could raise a factual issue if this Court resolved the cross-motions in favor of the Plaintiffs. Accordingly, it was established that if any factual issue survived this Court's ruling on the cross-motions for summary judgment, a jury trial would proceed on that issue. During the teleconference this Court also set forth a procedure by which the issue of attorneys' fees would be addressed. It was agreed that only in the event that the case was

---

fiduciary duty against ESM and Camellia but did not re-number Count IV. Pls.' Second Am. Compl. at 11, ECF No. 75.

[5] Plaintiffs' counsel received the $76,500.00 contingent fee on December 13, 2012. *See* Pls.' Mem. Ex. A, ECF No. 107-1 at 24. The Joint Pretrial Order states that Food Lion paid $425,000.00 to settle the Plaintiffs' claims. ECF No. 98.

resolved in favor of the Plaintiffs on summary judgment, the Plaintiffs would submit a petition for fees, which the Defendants would be free to oppose. *See* Telephone conference with Bruce Bright, counsel for the Plaintiffs, and Sanford Friedman, counsel for the Defendants (July 15, 2013 2:39 p.m. to 3:24 p.m.).

This Court granted summary judgment in favor of the Plaintiffs on the claim for breach of contract against Defendants Camellia and ESM, and denied the Defendants' motion for summary judgment. This Court found as a matter of law that the liquidated damages clause was valid and enforceable, and that the Defendants' assertion of a defense based on impracticability of performance did not raise a genuine issue of material fact. In an Order and Judgment dated July 18, 2013 (ECF No. 101), this Court awarded the Plaintiffs $115,100.00 in liquidated damages pursuant to the Lease. The Plaintiffs filed the pending Petition for Award of Attorneys' Fees and Costs (ECF No. 102).[6]

## ANALYSIS

The Plaintiffs request a total award of $126,246.90 for fees expended by Bruce F. Bright and Kevin P. Gregory of Ayres, Jenkins, Gordy & Almand, P.A., including one-half of the $76,500.00 contingency fee recovered, additional hourly fees, and various expenses. This Court finds that the total amount of fees requested is excessive in relation to the amount involved and the results obtained. In addition, the Plaintiffs may not recover any portion of the contingent fee already received by their counsel. Finally, this Court concludes that a portion of the requested costs are not recoverable and the total must be reduced.

---

[6] The Defendants filed a Notice of Appeal on August 15, 2013 (ECF No. 103).

## I.      Fees Are Recoverable in this Case

The Defendants first argue that no award of fees is proper in this case. The Defendants contend that because the fees requested by the Plaintiffs are an element of damages for breach of contract, this Court's entry of judgment merged the contract with the judgment. The Defendants assert that further claims on the issue of fees pursuant to the contract are precluded because the contract no longer exists. While the Defendants are correct that the attorneys' fees at issue comprise an element of damages for breach of contract, there has been no merger of the contract because this Court's judgment was not a final judgment. For reasons more fully explained below, the Plaintiffs may recover attorneys' fees in this case.

As this Court has previously held, in a diversity case, absent a conflicting applicable federal rule of procedure, Maryland law governs a party's right to recover attorneys' fees. *Roger E. Herst Revocable Trust v. Blinds to Go (U.S.) Inc.*, No. ELH-10-3226, 2011 WL 6444980, at *1 (D. Md. Dec. 20, 2011). Pursuant to the Lease between the parties in this case,

> If Landlord is required to bring or maintain any action (including assertion of any counterclaim or cross-claim, or claim in proceeding in bankruptcy, receivership or any other proceeding instituted by Tenant or by others), or otherwise refers this Lease to an attorney for the enforcement of any of the covenants, terms or conditions of this Lease, the Landlord shall, in addition to all other payments required herein, receive from Tenant all costs incurred by the Landlord, including reasonable attorney's fees and such costs and reasonable attorney's fees which the Landlord incurred on any appeal.

Lease § 18.3. Contractual provisions that allow for an award of reasonable attorneys' fees are generally valid and enforceable under Maryland law. *Myers v. Kayhoe*, 892 A.2d 520, 532 (Md. 2006).

Under Maryland law, attorneys' fees that are awardable pursuant to a contractual fee-shifting provision generally form part of the damages claim for breach of that contract. *G-C P'ship v. Schaefer*, 749 A.2d 823, 825 (Md. 2000) (per curiam); *Accubid Excavation, Inc. v. Kennedy Contractors, Inc.*, 981 A.2d 727, 736-37 (Md. App. 2009) ("[W]e have previously held in cases involving the recovery of *statutorily-permitted* or *rules-based* attorney's fees that the recovery of attorney's fees presents a matter collateral to or independent from the merits of the action. On the other hand, attorney's fees recoverable pursuant to a *contract* are part of the damages claim." (emphasis in original, citations and internal quotation marks omitted)). This general rule applies to "enforcement" provisions, *i.e.*, those for which the breach of the contract is a condition precedent to recovery of fees. *Lawley v. Northam*, No. ELH-10-1074, 2013 WL 1786484, at *27 (Apr. 24, 2013) (citing *G-C P'ship*, 749 A.2d at 824 (attorneys' fees constituted damages where guarantor contracted to reimburse plaintiffs "for all legal and other expenses paid or incurred in enforcing the Guaranty"); *Accubid*, 981 A.2d at 737 (attorneys' fees constituted damages where contract provided for recovery of fees "[i]n the event of a default by the Subcontractor . . . should the Contractor employ an attorney to enforce any provision hereof or to collect damages for breach of this Subcontract"); *SunTrust Bank v. Goldman*, 29 A.3d 724, 726 (Md. App. 2011) (attorneys' fees constituted damages where fee-shifting clause in credit agreement provided that borrower would pay "costs of collection . . . whether or not there is a lawsuit")).

A claim for attorneys' fees as part of damages must be made before a judgment is final. In Maryland, "under the rule of merger, 'a simple contract is merged in a judgment or

7

decree rendered upon it, and that all its powers to sustain rights and enforce liabilities terminated in the judgment or decree . . . ." *Accubid*, 981 A.2d at 738 (quoting *Jackson v. Wilson*, 25 A. 980 (1893)). In the context of a contract-based fee-shifting clause, "after all appeal rights are exhausted and the judgment in this case becomes final, [the] contractual right to attorneys' fees will be extinguished because the agreement will have merged into that judgment." *SunTrust Bank*, 29 A.3d at 731.[7]

In contrast, a contract may provide for an award of fees to a plaintiff or defendant who prevails in litigation arising out of the contract. *Grove v. George*, 994 A.2d 1032, 1034 (Md. App. 2010) ("In any action or proceeding between Buyer and Seller based, in whole or in part, upon the . . . Contract, including, but not limited to, breach of contract, negligence, misrepresentation or fraud, the prevailing party in such action or proceeding shall be entitled to receive reasonable attorney's fees . . . ."). Such a "prevailing party" clause is a cost-shifting mechanism, not an element of damages. *Lawley*, 2013 WL 1786484, at *27 (citing *Grove*, 994 A.2d at 1037). As such, a fee award pursuant to a prevailing party clause may be treated as a collateral matter that can be addressed after the entry of a final judgment. *Grove*, 994 A.2d at 1037 (holding that defendant's fee petition was collateral to the plaintiff's unsuccessful breach of contract claim). Conversely, a judgment is not final if fees that are an element of damages are left unresolved. *G-C P'ship*, 749 A.2d at 825 (reversing district

---

[7] The merger doctrine does not apply to statute- or rule-based fee-shifting provisions. *Grove v. George*, 994 A.2d 1032, 1036-37 (Md. App. 2010). Likewise, when the prevailing party in a breach of contract action is the defendant, who has made no claim for damages, the contract continues to exist even after a final judgment. *Id.* at 1037. Thus, such a defendant's fee request based on a contractual provision is a collateral matter because there is no practical difference from a statute- or rule-based fee request. *Id.* at 1037-38.

court's entry of final judgment because attorneys' fees awardable pursuant to contract had not been awarded).

Federal law also recognizes this distinction. Federal Rule of Civil Procedure 54(d)(2) provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by motion *unless the substantive law requires those fees to be proved at trial as an element of damages*." Fed. R. Civ. P. 54(d)(2)(A) (emphasis added). Rule 54(d)(2) "does not . . . apply to fees recoverable as an element of damages, when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury." Fed. R. Civ. P. 54 advisory committee's note (1993). The United States Court of Appeals for the Fourth Circuit held, in *Carolina Power & Light Co. v. Dynegy Marketing & Trade*, that "an unresolved motion to assess attorneys fees as costs to the prevailing party generally does not prevent a judgment on the merits from being final because it does not call into question a decision on the merits." 415 F.3d 354, 358 (4th Cir. 2005) (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988)). However, "an unresolved claim for *substantive* attorneys fees under the complaint *does* prevent the entry of judgment." *Id.* at 359. Therefore, the Fourth Circuit held that "a district court decision that leaves unresolved a claim for attorneys fees that are sought as an element of damages under the substantive law is not a final decision within the meaning of 28 U.S.C. § 1291." *Id.* This is precisely the posture of this case, as this Court clearly withheld a ruling on attorneys' fees until a determination of liability on Count I.

The contractual provision at issue in this case is an "enforcement" clause. Lease §

18.3 ("*If* the Landlord is required to bring any action . . . *or* otherwise refers this Lease to an

attorney for the *enforcement* of any of the covenants . . . ." (emphasis added)). The Plaintiffs'

fee petition pursuant to that clause is similar to the request at issue in the Fourth Circuit's

decision in *Carolina Power & Light Co. v. Dynegy Marketing & Trade*, 415 F.3d 354 (4th Cir.

2005). In *Carolina Power & Light*, the contract provided that the seller was entitled to fees

upon the buyer's refusal to accept a proper delivery of coal. *Id.* at 356. The Fourth Circuit

recognized that under the contract, the plaintiff's right to attorneys' fees accrued as soon as

the contract was breached, not upon prevailing in the litigation. Therefore, the Fourth

Circuit held that the award of fees was an element of damages—a substantive issue for

purposes of Rule 54(d)(2)—and final judgment could not be entered until the issue of fees

was resolved. *Id.*

Similarly, in this case, the Plaintiffs' request for attorneys' fees is a substantive claim

for damages because enforcement of the Lease upon breach is the condition precedent to

the right of the Plaintiffs to recover fees, not the institution of a lawsuit. Thus, the Plaintiffs'

claim for fees could stand alone. That is, if the Plaintiffs incurred costs in enforcing the

Lease, they could bring a claim for those fees pursuant to the Lease terms, independent of a

breach of contract action. Although the fees and costs outlined by the Plaintiffs in their

Petition were mostly incurred in connection with this litigation, the Lease is broader because

it allows for the recovery of any costs of enforcement, whether or not a breach of contract

claim was filed. Therefore, as in *Carolina Power & Light*, the remaining issue of the Plaintiffs' fee request is a substantive matter under Rule 54(d)(2).[8] 415 F.3d at 360.

A final judgment could not have been entered in this case because the substantive matter of fees was deliberately left unresolved. This Court entered an Order and Judgment of July 18, 2013, and the Defendants noted an appeal on August 15, 2013. In *Carolina Power & Light*, the Fourth Circuit held that because the issue of attorneys' fees as damages was still open, the judgment was not final and thus unappealable. 415 F.3d at 362. The Fourth Circuit so held despite the fact that the district court had entered a "judgment." *Id.* at 358 ("The label that a district court attaches to an order does not control whether the order is a final decision.") (citations omitted). Rather, the inquiry is whether the district court's order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Id.* (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

This Court's July 18, 2013 Order and Judgment is not a final judgment because the issue of attorneys' fees was not addressed. Throughout this case, the Defendants have been on notice that the Plaintiffs would seek an award of fees. Second Am. Compl., ECF No. 75 ¶ 23; Pretrial Order, ECF No. 98. Most tellingly, in a teleconference held on the record on July 15, 2013, the parties agreed that the issue of attorneys' fees would proceed separately

---

[8] Section 18.3 of the Lease is not a collateral "prevailing party" provision, as the Plaintiffs argue. Pls.' Reply 6-8. The coincidence that the Plaintiffs could recover such costs if they prevail on a breach of contract claim does not mean that the claim is *based* on being a prevailing party. *Carolina Power & Light*, 415 F.3d at 362. In addition, although the Plaintiffs argue otherwise, the fact that Section 18.3 of the Lease provides for fees associated with any appeal does not prevent this from being a substantive damages clause. *See SunTrust Bank*, 29 A.2d at 726 (clause providing for appeal fees was an element of damages for breach of contract that requesting party could recover by "put[ting] on evidence of fees that will, with certainty, be incurred in addition to those actually incurred at that time").

only in the event that the Plaintiffs established that the Defendants were liable for liquidated damages. *See* Telephone conference with Bruce Bright, counsel for the Plaintiffs, and Sanford Friedman, counsel for the Defendants (July 15, 2013 2:39 p.m. to 3:24 p.m.). During the call, the Defendants argued that because the Plaintiffs had not itemized their attorneys' fees as damages, they were not entitled to recovery. It was then established that if summary judgment was granted in favor of the Plaintiffs, the Plaintiffs would submit a fee petition, and the Defendants would have an opportunity to challenge the request. At the summary judgment stage, where the issues had been narrowed to whether the Plaintiffs were entitled to a set amount for liquidated damages, considering attorneys' fees as an element of actual damages at the same time would have unnecessarily complicated matters. Moreover, it would have been a waste of the parties' time, as well as judicial resources, to brief that issue in the event that the Defendants were not found liable; the fee-shifting clause in the Lease did not provide for any recovery if the Defendants prevailed. The Defendants, having agreed to this procedure, will not now be permitted to argue that the Plaintiffs' recovery is precluded by a failure to plead attorneys' fees as damages before summary judgment was granted.

Subsequent to the teleconference, the Plaintiffs' Motion for Summary Judgment (which requested attorneys' fees) was granted. This Court granted the motion in its entirety, but the Order and Judgment did not provide for an award of fees, having established that the resolution of the issue of fees would await a petition by the Plaintiffs and any opposition by the Defendants. Because, as agreed, that substantive matter was left unresolved, the

judgment in this case is not final under 28 U.S.C. § 1291 and therefore not presently appealable under Federal Rule of Appellate Procedure 4(a). *Carolina Power & Light*, 415 F.3d at 360. The Defendants' Notice of Appeal (ECF No. 103) was thus premature because the time for taking an appeal has not yet begun. *Id.* at 362 (dismissing appeal and remanding for further proceedings when appeal was filed before fees were awarded); *accord G-C P'ship*, 749 A.2d at 824-25 (dismissing appeal of party who appealed after granting motion for summary judgment against him, but before court awarded substantive fees, because the judgment was not final at time of appeal). Finally, because there has been no final judgment, the doctrine of merger does not apply, and additional fees are recoverable in this case.

## II. The Plaintiffs' Fee Request

This Court now considers the Plaintiffs' fee request. The Lease provides for an award of reasonable attorneys' fees and costs. Lease § 18.3. In determining any fee award, the court must examine the fee request for reasonableness. *Myers*, 892 A.2d at 532. The burden is on the party seeking recovery to demonstrate through "detailed records" that the fees are reasonable. *Roger E. Herst Revocable Trust*, No. ELH-10-3226, 2011 WL 6444980, at *2 (D. Md. Dec. 20, 2011) (citation omitted). As this Court has recently noted, although courts generally use the "lodestar" approach when determining attorneys' fees under fee-shifting statutes, the lodestar method does not apply to contractual fee-shifting provisions under Maryland law. *Id.* Rather than using the lodestar approach, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees

based on a contract entered by the parties authorizing an award of fees." *Id.* (citing

*Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton*, 7 A.3d 1, 5 (Md. 2010)).[9] Those factors

are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent. [10]

---

[9] In *Roger E. Herst Revocable Trust*, Judge Hollander of this Court concisely set forth the rationale for determining fees according to MRPC Rule 1.5 rather than the lodestar method:

> [T]he Maryland Court of Appeals has held that the lodestar approach is "an inappropriate mechanism for calculating fee awards" under contractual fee-shifting provisions in "disputes between private parties over breaches of contract." This is because a "contractual fee-shifting provision is designed by the parties, not by the legislature. . . . Thus, it serves no larger public purpose than the interests of the parties."

2011 WL 6444980, at *2 (citations omitted).

[10] There is considerable overlap between the Rule 1.5 factors and the factors typically considered in a lodestar analysis. *See Nautical Girl LLC v. Polaris Investments Ltd.*, No. ELH-10-3564, 2011 WL 6411082, at * 2 (D. Md. Dec. 19, 2011). "Nonetheless, there is a significant reason for choosing Rule 1.5—unlike the lodestar method, Rule 1.5 does not carry with it the notion that the importance of the right vindicated will justify an expenditure of attorney time that is hugely disproportionate to the dollar amount at issue in the case." *Monmouth Meadows*, 7 A.3d at 8.

Md. Rules 16-812 Rules of Professional Conduct, Rule 1.5(a).  However, this Court "does not need to evaluate each factor separately," and need not "make explicit findings with respect to Rule 1.5 at all, or even mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness."  *Nautical Girl LLC v. Polaris Investments Ltd.*, No. ELH-10-3564, 2011 WL 6411082, at *2 (D. Md. Dec. 19, 2011) (quoting *SunTrust Bank v. Goldman*, 29 A.3d 724, 730 (Md. App. 2011) and *Monmouth Meadows*, 7 A.3d at 10 n.3).

## A.  Fees Attributable to the Defendants

As an initial matter, this Court must address the Defendants' argument, made throughout their Opposition, that the Plaintiffs may not recover any fees not directly related to the claim for breach of contract against Defendants ESM and Camellia in Count I.  The Defendants contend that fees expended for work relating to claims against Food Lion may not be recovered.  Like the award of fees itself, the trial court has wide discretion to allocate the fee award among defendants.  *See Thompson v. United States Dep't of Housing & Urban Dev.*, No. Civ. MJG-95-0309, 2002 WL 31777631, at *14 (D. Md. Nov. 21, 2002) (emphasizing that "district courts should make every effort to achieve the most fair and sensible solution that is possible without encouraging a complex mini-litigation on attorney's fees") (citations and internal quotation marks omitted).  In addressing the question of fee allocation, this Court has previously concluded that joint and several liability was appropriate after considering:  (1) the nature of the injury and who caused it; (2) the amount of time the plaintiffs spent litigating against each defendant; and (3) of the least importance, the

defendants' ability to pay." *See, e.g.*, *Essex v. Randall*, No. DKC-03-3276, 2006 WL 83424, at *6-7 (D. Md. Jan. 11, 2006) (citing *Thompson*, 2002 WL 31777631, at *15).

This case arose out of concerted conduct among the Defendants and Food Lion, and the interrelated claims against ESM, Camellia, and Food Lion were based on that common nexus of facts. Thus, the fees incurred by the Plaintiffs cannot be neatly separated into work expended on each Defendant. Any attempt to do so would result in precisely the sort of "complex mini-litigation" that a court must avoid when determining an award of fees. Food Lion, who settled with the Plaintiffs, is not a party to the Lease and cannot be liable for any fee award pursuant to the contractual fee-shifting provision. As to Camellia, the parent, and ESM, the subsidiary, those Defendants are jointly and severally liable for the amount of fees and costs deemed reasonable in this Memorandum Order.

### B. Reasonableness of the Fee Petition

Rule 1.5 of the Maryland Rules of Professional Conduct requires a court to consider "the fee customarily charged in the locality for similar legal services" and "whether the fee is fixed or contingent." Initially in this case, the Plaintiffs entered a modified contingent fee arrangement whereby attorneys Bright and Gregory charged a reduced hourly rate of $150.00 per hour and were also entitled to a reduced share of any recovery. Such a hybrid agreement is a common arrangement. *See, e.g.*, *Attorney Grievance Comm'n of Md. v. Pennington*, 733 A.2d 1029, 1036 (Md. 1999) (recognizing that fee agreements often may contain fixed and contingent elements). After the settlement with Food Lion, which included payment of $76,500.00 in contingent legal fees to their counsel, the Plaintiffs entered a standard hourly

fee arrangement with counsel.  Under the new arrangement, Bright and Gregory[11] billed at $250.00 per hour, which is the "customary" rate between the Plaintiffs and this law firm based on their past relationship and expectation of future representation.  Given this Court's knowledge of the local market, as well as the fact that the fees were charged at a rate according to the customary dealings between the Plaintiffs and their attorneys, this Court finds the terms of the retainer agreement with Bright and Gregory were reasonable when entered.

The Maryland Court of Appeals held in *Attorney Grievance Commission v. Pennington* that a fee arrangement with contingent features that is reasonable when entered into must still be reevaluated for reasonableness after recovery.  733 A.2d at 1036.  In *Pennington*, an attorney represented a retail store employee under a retainer agreement that included contingent and hourly provisions.  The client was suing her employer for discrimination in failing to promote her to a managerial position.  The attorney secured a $25,000.00 monetary recovery and placement of the client in a management position.  The court held that although the attorney's contingent fee of $15,000.00 ultimately equaled 60% of the monetary recovery, because the client's primary objective had been to obtain the managerial position, the plaintiff's improved employment increased the total value of the recovery.  Thus, when considering "the amount at issue and the result achieved," the fee received by the attorney did not violate Rule 1.5.  *Id.*

---

[11] This Court notes that Gregory has not entered an appearance in this case.  Even so, it appears from the records submitted by the Plaintiffs that Gregory performed significant work in this matter, and that his time should be properly compensated.

This Court is mindful that the standard for reasonableness under Rule 1.5 in an attorney grievance matter is different from that in a fee-shifting dispute. *See Monmouth Meadows*, 7 A.3d at 8-9 ("We hasten to say, however, that we do not opine on the reasonableness of the fee agreement . . . for the purposes of determining any ethical violation . . . . When courts are asked to award "reasonable attorneys' fees" against a person or entity not privy to the fee agreement, they act in a different role than a court reviewing a charge by the Attorney Grievance Commission that a specific fee agreed to by an attorney's client was not reasonable."). Even so, the general principle articulated in *Pennington* is applicable to this case. The Plaintiffs' first hybrid contingent fee arrangement with counsel was reasonable when they entered into it. Now that the fee in this case is quantifiable as a whole, it must be tested against the Rule 1.5 factors. *Pennington*, 733 A.2d at 1036. In particular, this Court considers the amount involved and the results obtained. MRPC Rule 1.5(a)(4). Under Rule 1.5, the size of a fee award relative to the amount of damages sought is a factor to be considered. *Monmouth Meadows*, 7 A.3d at 8 (noting that a proper fee award may approach or even exceed the amount at issue). This Court has previously held, however, that a mechanical approach is inappropriate to determine the "results obtained." *See Roger E. Herst Revocable Trust*, 2011 WL 6444980, at *8-12 (rejecting use of percentage of *ad damnum* clause amount as proxy for degree of success).

The billing records indicate that $76,500.00 was paid on December 13, 2012 to Plaintiffs' counsel in connection with the settlement between the Plaintiffs and Food Lion, and the dismissal of Counts II and IV against Defendants Camellia and ESM. In their

petition, the Plaintiffs seek an award of $38,250.00 for one-half of the contingency fee. The Plaintiffs' request in this regard is denied. The Plaintiffs are requesting that a percentage of a fee already paid them be paid a second time. To order the Defendants to pay any portion of the contingent fee again would amount to an impermissible double recovery by the Plaintiffs. In fact, the entire $76,500.00 amount must be considered as a fee already paid to Plaintiffs' counsel when determining the reasonableness of the overall fee award.

As to "the amount involved and the results obtained," the Defendants argue that the amount of fees and costs requested by the Plaintiffs is unreasonable because it is excessive in light of the "limited recovery" obtained by the Plaintiffs. Defs.' Opp., ECF No. 108 at 6. In support of this contention, the Defendants note that the judgment of $115,100.00 obtained against them is only a small fraction of the $3 million in compensatory damages that the Plaintiffs demanded in their Second Amended Complaint. ECF No. 108 at 6-9. The Defendants contend that the $126,246.90 requested by the Plaintiffs is therefore excessive when compared to the amount actually recovered from the Defendants ESM and Camellia.

While this Court does not follow such a mechanical approach of comparing the amount of the *ad damnum* clause in the Second Amended Complaint to the ultimate recovery against Defendants ESM and Camellia, this Court concludes that the amount for fees and expenses requested by the Plaintiffs is unreasonable in light of the amount involved and the results obtained. As discussed above in Part II.A of this Memorandum Order, the claims in this case involved concerted conduct by Food Lion, Camellia, and ESM, and the work expended was necessarily interrelated. Viewing this litigation as a whole, the amount now

requested by the Plaintiffs does not account for amounts already received by counsel, and is disproportionate to the level of success achieved.[12]  In *Pennington*, the court considered non-monetary benefits to the client as part of the recovery to determine the reasonableness of the fee charged by counsel.  In this case, presented with converse circumstances, this Court considers the fee amount previously paid to Plaintiffs' counsel in evaluating the reasonableness of the overall fee award.  *Cf. Pennington*, 733 A.2d at 1036.  Plaintiffs' counsel has already been paid a contingent fee of $76,500.00.  For work expended both before and after the settlement with Food Lion and the dismissal of several claims in the Second Amended Complaint, this Court concludes that an additional $50,000.00 is a reasonable award for attorneys' fees pursuant to the contractual fee-shifting provision.  The fee award of $50,000.00, when considered together with the contingent fee amount already received, is reasonable relative to the amount involved in this case and the results obtained by the Plaintiffs' attorneys.

### C. Expenses

The Plaintiffs also request an award of $35,423.65 for expenses, including fees paid to various experts and consultants.  In general, plaintiffs who are entitled to receive reasonable attorneys' fees are also entitled to the expenses they reasonably incurred in preparation of their case.  *See, e.g.*, *Gionfriddo v. Jason Zink, LLC*, No. RDB-09-1733, 2013 WL 1222350, at *8

---

[12] The Plaintiffs maintain that they are entitled to 100% of hourly fees incurred during the time that Food Lion was a party, but "out of a sense of fairness," seek only 50% of fees incurred during that time.  While this Court acknowledges that the Plaintiffs have requested less than they believe they have reasonably expended, the total request must be reduced on the ground that it is excessive in light of the amount involved and the results obtained.

(D. Md. Mar. 25, 2013) (citing *Daly v. Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986); *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623-24 (4th Cir. 1978)). These expenses include "supplemental secretarial costs, copying, telephone costs and necessary travel." *Wheeler*, 585 F.2d at 623. Many of the expenses requested by the Plaintiffs are the type normally incurred in preparing a case for litigation and taking the matter to judgment. Such fees are awarded in the amount of $17,170.05.[13]

The Plaintiffs' request for expert fees as part of their expenses is denied. Under Maryland law, the general rule is that the expenses of litigation, other than ordinary court costs, are not recoverable in an action for damages unless authorized by statute or contracted-for by the parties. *Collier v. MD-Individual Practice Ass'n*, 607 A.2d 537, 542, 545 (Md. 1992) ("With the exception of cases involving liability insurers and cost of defense, Maryland law has never recognized fee shifting in breach of contract actions, absent contractual provision, statute or rule."); *accord Hess Constr. Co. v. Bd. of Educ. of Prince George's Cnty.*, 669 A.2d 1352, 1354 (Md. 1996); *see also Bahena v. Foster*, 883 A.2d 218, 228 (Md. App. 2005) (denying petition for attorneys' fees and expert fees as costs in a contempt petition action between private parties). Likewise under federal law, district courts do not have discretion under Rule 54(d) to tax expert fees as costs. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 441, 437 (1987). Absent explicit contractual or statutory authority, no expert

---

[13] The Defendants' argument that the Plaintiffs have waived their right to seek any costs is unfounded. This Court set forth a procedure by which the matter of fees and costs would be determined in this case, and the Plaintiffs followed that procedure. Therefore, the Plaintiffs have not broadly waived their right to seek an award for costs.

witness fees are recoverable.[14]  *Id.*  The Lease between the parties in this case states that the Plaintiffs may recover "costs," but does not provide for the recovery of expert fees. Although the expert fees expended by the Plaintiffs may have been necessary and reasonable, this Court has no legal basis upon which to award those fees.  Accordingly, this Court grants an award of the Plaintiffs' expenses only, in the amount of $17,170.05.

### D. Quarterly Statements

Finally, the Defendants argue that the Plaintiffs are not entitled to an award because they failed to comply with the Guidelines for Determining Attorneys' Fees in Certain Cases in Appendix B of the Local Rules of this Court.  Local Rules, App. B.1.c (D. Md. 2011). Guideline 1.c requires counsel for a party intending to seek fees to submit quarterly statements showing time spent on the case and the total value of that time.  *Id.*  Although a failure to provide these quarterly reports *may* result in a denial or reduction of fees, opposing counsel may not seek such a denial or reduction of fees from the court without first requesting that such quarterly statements be provided.  *Id.* at n.3.  In this case, the Defendants did not request that the Plaintiffs provide quarterly statements, and are therefore precluded from requesting denial or reduction of the fee award on that basis.  The Defendants' standard requests for production of documents and interrogatories seeking itemization of damages did not amount to a request for quarterly reports pursuant to the

---

[14] Under 28 U.S.C. § 1821(b) and 28 U.S.C. § 1920(3), a party may recover $40.00 per day for witness appearance fees.  The Plaintiffs have made no such claims and have not clearly delineated how many days any expert witness appeared for deposition.  Therefore, no daily witness appearance fees will be awarded.

Guidelines. This Court declines to impose any further reduction to the award of attorneys' fees.

## CONCLUSION AND ORDER

For the reasons stated above, Plaintiffs' Petition for Award of Attorneys' Fees and Costs (ECF No. 102) is GRANTED in the amounts of $50,000.00 for attorneys' fees and $17,170.05 for expenses. Fees and expenses totaling $67,170.05 SHALL BE AWARDED to the Plaintiffs. Finally, it is HEREBY ORDERED that the Clerk of the Court shall CLOSE THIS CASE.


Dated:        October 18, 2013                    _____/s/_____
                                                  Richard D. Bennett
                                                  United States District Judge